IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES COTTON,<br><br>                Plaintiff,<br><br>    v.<br><br>DOUGLAS COUNTY DEPARTMENT OF CORRECTIONS, DOUGLAS COUNTY, NEBRASKA and JACQUELINE ESCH, in her official capacity as a medical doctor of Defendant Douglas County, Corrections;<br><br>                Defendants. | **8:16CV153**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on a Motion to Dismiss filed by defendants Douglas County Department of Corrections ("DCC") and Douglas County ("County," or, collectively, "County defendants") (Filing No. 13).[1] This is an action for deprivation of civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Jurisdiction is based on 28 U.S.C. § 1331 and 1343.

I. **BACKGROUND**

In his Complaint, James Cotton, a pretrial detainee in the custody of defendant Douglas County Department of Corrections ("DCC"), alleges he is a person with disabilities, including nerve damage that require him to wear a back brace and knee problems that require him to wear a knee brace. He also alleges he requires, and has not been provided, pain medications and has been denied the reasonable accommodation of a wheelchair. Further, he alleges he (1) has physical impairments that substantially limit

---

[1] No return of summons has been filed for Defendant Jacqueline Esch ("Dr. Esch"). Dr. Esch has not moved to dismiss, nor has she filed an answer. She was sued only in her official capacity and the record shows summons was issued to Jacqueline Esch, M.D., Medical Doctor for Douglas County Department of Corrections, 710 South 17th St. Omaha, NE 68102.

his major life activities; (2) is otherwise qualified to receive the benefits from and participate in DCC's services, programs, and activities; (3) has been denied access to those activities; and (4) "was generally discriminated against because of his disabilities." He alleges he has been denied the accommodations that would enable him to participate. Dr. Esch, is identified as a doctor and agent of defendant DCC.[2] The plaintiff also contends defendants knew and ignored excessive risks to his health and safety and asserts the defendants' conduct amounts to deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

Defendant DCC moves to dismiss asserting that it is not a "person" subject to suit under 42 U.S.C. § 1983, but is merely a department within Douglas County. The County also contends it is not an entity subject to suit. It also seeks dismissal based on the plaintiff's failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*

The County also contends the plaintiff's § 1983, ADA, and § 504 claims are subject to dismissal for failure to state a claim upon which relief can be granted. It argues, with respect to the plaintiff's § 1983 claim, that the plaintiff has failed to allege a custom or policy of the county, so as to subject it to municipal liability. It contends that the plaintiff's claims of discrimination in violation of Title II of the ADA and Section

---

[2] Defendant Douglas County has filed an affidavit, with an attached excerpt from an "Inmate Health and Mental Health Services Contract" between Correct Care Solutions and Douglas County (Filing No. 14-1). The County contends the contract is a public record that can be considered on a motion to dismiss. The Court finds it unnecessary to determine whether or not the document can properly be considered since the document is largely irrelevant. The excerpt from the contract purports to show that Care Consultants, Inc. is an independent contractor. Dr. Esch has been sued only in her official capacity. The plaintiff alleges that Dr. Esch is a state actor and is acting under color of law. It is widely accepted that independent contractors may act under color of law. *See West v. Atkins*, 487 U.S. 42, 55-56 (1988) (holding that a prison physician who furnishes medical services to state prison inmates as part of his contractual duties to that state acts under color of state law for the purposes of § 1983); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) ("To act under color of law does not require that the accused be an officer of the State" (internal quotation marks omitted)).

504 are conclusory allegations insufficient to state plausible claims to relief. The County argues the plaintiff's Complaint is "devoid of factual enhancement describing how he was discriminated against" and fails to identify or describe the accommodations he needs.

The County also argues that the plaintiff cannot maintain a § 1983 action because his "§ 1983 claims for alleged violations of his Eighth and Fourteenth Amendment rights are predicated on the same allegations underlying his ADA and Section 504 claims, warranting dismissal because violations of the ADA and Section 504 are not intended to also be cognizable under § 1983."

## II.     DISCUSSION
### A.     Standard of Review/Pleading Standards

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Courts follow a "two-pronged approach" to evaluate Federal Rule of Civil Procedure 12(b)(6) challenges. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court divides the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal conclusions should be disregarded. *Id.* Second, the Court reviews factual allegations for facial plausibility. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677 (stating that the plausibility standard does not require a probability but asks for more than a sheer possibility that a defendant has acted unlawfully).

There is no heightened pleading requirement in a § 1983 suit against a municipality. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Thus, "[t]he failure of the [plaintiff] to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to [his] claim for relief." *Doe ex rel. Doe v. School Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003) (noting that when a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs that may have caused the deprivation of a constitutional right); *see also Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (explaining the plaintiff "need not . . . specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss"). Nevertheless, a plaintiff's complaint must contain "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of [the defendant]." *Doe*, 340 F.3d at 614.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

### B.     Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was committed by a person acting under color of state law. *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see also* 42 U.S.C. § 1983. The conditions of confinement for pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendments, not the Eighth Amendment. *Vaughn v. Gray*, 557 F.3d 904,

908 n.4 (8th Cir. 2009). However, "'the identical deliberate-indifference standard' is applied to both pretrial detainees and convicted criminals." *Id.*; *see also Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003) (noting that the Fourteenth Amendment's Due Process Clause extends at least as much protection to pre-trial detainees as the Eighth Amendment affords to convicted criminals).

The Eighth Amendment prohibits prison officials' cruel and unusual punishment of inmates, and it has been interpreted as obligating prison officials to provide medical care to inmates in their custody. *Tlamka v. Serrell*, 244 F.3d 628, 632-33 (8th Cir. 2001). An inmate's "right to medical care is violated if prison officials' conduct amounts to 'deliberate indifference to [the prisoner's] serious medical needs.'" *Id.* at 633 (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997)). Deliberate indifference has both an objective and a subjective component: the objective component requires a plaintiff to demonstrate an objectively serious medical need and the subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need. *Vaughn*, 557 F.3d at 908; *Holden v. Hirner*, 663 F.3d 336, 342-43 (8th Cir. 2011) (likening the standard to criminal recklessness).

Municipalities are considered "persons" and may be sued under Section 1983, but are liable only for injuries arising from an official policy or custom. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). There is "an important distinction between claims based on official policies and claims based on customs." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009). "[A] custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.'" *Id.* at 634 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). A plaintiff must also show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it. *Id.* "From this standard it follows that '[l]iability for an unconstitutional custom . . . cannot arise from a single act.'" *Id.* (quoting *McGautha v. Jackson County*, 36 F.3d 53, 57 (8th Cir. 1994)).

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *Dean v. County of Gage, Neb.*, 807 F.3d 931, 940 (8th Cir. 2015). "These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'" *Id.* (quoting *McMillian v. Monroe County,* 520 U.S. 781, 784 (1997)). "Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins*, 557 F.3d at 633; *see also Dean*, 807 F.3d at 940-41 ("An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business."); *Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir. 1992) (holding that municipal officials who have final policymaking authority may, by their actions, subject the government to § 1983 liability); *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

"To establish the existence of a policy, [a plaintiff] must point to 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Jenkins*, 557 F.3d at 633 (quoting *Mettler*, 165 F.3d at 1204). Moreover, a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). In other words, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

Municipal departments, however, are generally not considered "persons" within the meaning of 42 U.S.C. § 1983. *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995); *see also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (affirming a district court's dismissal of claims against a county sheriff's department); *Umhey v. County of Orange,* 957 F. Supp. 525, 531-32 (S.D.N.Y. 1997) (holding that the county board of ethics was merely a subunit of the county and as such, was not subject to suit under § 1983); *Smith–*

*Berch, Inc. v. Baltimore County*, 68 F. Supp. 2d 602, 626 (D. Md. 1999) (holding that county council, permits department, police department, and the office of zoning commissioner were not "persons" within the meaning of § 1983); *Post v. City of Fort Lauderdale*, 750 F. Supp. 1131, 1133 (S.D. Fla. 1990) (holding that a city zoning department is not a "person" under § 1983). Capacity to sue or be sued is determined "by the law of the state in which the district court is held." Fed. R. Civ. P. 17(b). Under Nebraska law, only the County is an entity subject to suit—a department is not a separate legal entity.[3] *See Holmstedt v. York Cnty. Jail Supervisor*, 739 N.W.2d 449, 461 (Neb. Ct. App. 2007), *rev'd on other grounds*, 745 N.W.2d 317 (Neb. 2008).

"Public servants may be sued under § 1983 either in their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In contrast, suing a defendant in his official capacity is generally an alternative means of suing the entity of which the defendant is an officer or agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The real party in interest is the entity, not the official named. *Id.* at 166 ("As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Official capacity claims are "functionally equivalent to a suit against the employing governmental [or institutional] entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

---

[3] Under Neb. Rev. Stat. § 23–101, "[e]ach county, established in this state according to the laws thereof, shall be a body politic and corporate, by the name and style of the county of, and by that name may sue and be sued." Similarly, cities have the capacity to be sued. Neb. Rev. Stat. § 14–101. In addition to these specific provisions for counties and cities, Nebraska law provides that any government entity may be sued in its own name if it is an independent political subdivision. Neb. Rev. Stat. § 13–903. Political subdivisions include "villages, cities of all classes, counties, school districts, learning communities, public power districts, and all other units of local government." *Id.* A political subdivision is characterized by "a governing body with the power and authority to appropriate funds and make expenditures." *Meyer v. Lincoln Police Dep't*, 347 F. Supp. 2d 706, 707 (D. Neb. 2004).

Because the governmental entity is liable in an official-capacity claim, a plaintiff must demonstrate that the entity's policy or custom played a part in the violation of the plaintiff's rights. *Id.* An official capacity suit against an individual is a suit not against the individual but against her or his office and "[a]s such, it is no different from a suit against the State itself." *Hafer*, 502 U.S. at 26 (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 65 (1989)).

A plaintiff may use § 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999); *Maine v. Thiboutot*, 448 U.S. 1, 4-8 (1980). "An exception to this general rule exists when a comprehensive remedial scheme evidences a congressional intent to foreclose resort to § 1983 for remedy of statutory violations." *Id.* The ADA's detailed remedial scheme bars a plaintiff from maintaining a § 1983 action for alleged violations of the ADA. *Id.*; *see also Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1531 (11th Cir. 1997) (holding that a plaintiff may not maintain a § 1983 action in lieu of—or in addition to—an ADA or Rehabilitation Act cause of action if the only alleged deprivation is of the employee's rights created by the ADA and Rehabilitation Act).

### C. ADA/ Rehabilitation Act § 504

Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity." *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999).[4] A "public entity" under this provision includes a correctional facility.

---

[4]Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability . . . shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2000). The enforcement, remedies, and rights are the same under both Title II of the ADA and § 504, although the Rehabilitation Act contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance. *See Gorman*

8

*United States v. Georgia*, 546 U.S. 151, 154 (2006). "'[R]ecreational activities, medical services, and educational and vocational programs' at state prisons are benefits within the meaning of Title II." *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009) (quoting *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). The ADA "prohibits a somewhat broader swath of conduct than the Constitution itself forbids." *Georgia*, 546 U.S. at 160 n.\* (Stevens, J., concurring).

Under the ADA, there are two means of discrimination: (1) disparate treatment (intentional discrimination) and (2) the failure to make reasonable accommodations. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). In order to sufficiently allege that a correctional facility and its administrators and medical staff violated Title II of the ADA, an inmate must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the jail's services, programs, or activities, or was otherwise subjected to discrimination by the jail; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). Disparate treatment discrimination is based on the "employer's intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Id.* at 767. "The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if he was motivated by the disability." *Id.* Title II provides that "'qualified individual[s] with a disability' are entitled to 'meaningful access' to such benefits." *Mason*, 559 F.3d at 886 (quoting *Randolph*, 170 F.3d at 857-58). To allege a violation of Title II, a plaintiff "must specify a benefit to which he was denied meaningful access based on his disability." *Id.* at 888.

---

*v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998); *Hoekstra v. Indep. Sch. Dist. No. 283*, 103 F.3d 624, 626 (8th Cir. 1996); *Thomlison v. City of Omaha*, 63 F.3d 786, 788 (8th Cir. 1995). Given the similarities between the ADA and § 504, "cases interpreting either are applicable and interchangeable." *Gorman*, 152 F.3d at 912.

### III. ANALYSIS

The Court first finds that DCC is not a proper defendant and the plaintiff's claims against DCC will be dismissed. The County, however, can properly be a named defendant in a § 1983 action.

Although the County may properly be named a defendant, a county is not subject to liability for constitutional torts under the doctrine of respondeat superior. Rather, the plaintiff must allege facts from which it can be inferred that the allegedly unconstitutional conduct was directly attributable to the County. He must allege either an unconstitutional custom or policy or conduct by a policymaker. Cotton has alleged no facts from which it could be inferred that an unconstitutional policy exists. He has not alleged that any alleged deprivations were the result of conduct by a policymaker or decision-maker. Cotton has not alleged a plausible claim under § 1983 for municipal liability in this case. He has not pointed to "any officially accepted guiding principle or procedure that was constitutionally inadequate" and has not pointed to a "'deliberate choice of a guiding principle or procedure made by the [institutional] official who has final authority regarding such matters.'" *Jenkins*, 557 F.3d at 633 (quoting *Mettler*, 165 F.3d at 1204).

In his Complaint, the plaintiff alleges only that Dr. Esch is a doctor at the DCC and the DCC and its agent, Dr. Esch, deliberately denied him medical care. Although Cotton need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, he must nonetheless present some allegations, references, events, or facts from by which the court could begin to draw an inference that the conduct complained of, namely deliberate indifference to serious medical needs, resulted from an unconstitutional policy or custom of the County or a deliberate choice by a decision-maker with final authority. *See Doe*, 340 F.3d at 614. The plaintiff does not fulfill the minimum requirement that he allege facts that would support such an inference.

Accordingly, the Court finds the County's motion to dismiss the plaintiff's § 1983 claim should be granted.[5]

In the interests of justice, however, the Court finds the plaintiff should be granted leave to amend. The Court cannot foreclose the possibility that Cotton may be able to allege facts that establish the requisite municipal liability for a § 1983 claim against the County. The failure to do so however, will likely lead to dismissal of plaintiff's claims.

The Court's findings with respect to the plaintiff's allegations against the County apply with equal force to Dr. Esch in her official capacity. A plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation in order to state a claim against a government official in his or her official capacity. The claims against the County and Dr. Esch are duplicitous and, assuming the plaintiff asserts the same claims in his amended complaint, one or the other of them should not be included as a defendant.

With respect to the plaintiff's ADA and § 504 claims, the Court rejects the County's contention that the plaintiff's Complaint is subject to dismissal for failure to exhaust administrative remedies. Exhaustion is an affirmative defense and does not have to be alleged in the complaint.

However, the Court finds the plaintiff's ADA allegations are deficient in other respects. The plaintiff's allegation that he is disabled, though thin, is sufficient to withstand a motion to dismiss. His allegations of denial of reasonable accommodations, however, set out only labels and conclusions and amount to a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. There are no allegations

---

[5]The Court finds the County's argument that the plaintiff cannot maintain a § 1983 claim because it is predicated on the same allegations as his ADA and § 504 claims is unavailing. His reliance on *Holbrook,* 112 F.3d at 1531, in support of that contention is misplaced. In contrast to the plaintiff in *Holbrook*, Cotton's § 1983 claim appears that it is not based on an ADA or § 504 violation, it is based on an alleged constitutional violation.

11

concerning the nature of the benefits, services, programs or activities to which he was denied meaningful access, nor are there allegations that relate to whether and to whom he requested such accommodations. Also, there is no factual support for the allegation that he was "generally discriminated against because of his disability". The court finds the plaintiff's Complaint does not contain sufficient factual matter to state an ADA or Rehabilitation Act claim that is plausible on its face. Again, however, in the interest of justice, the plaintiff will be granted leave to amend to address the deficiencies in his pleading. Accordingly,

IT IS ORDERED:

1. Defendant Douglas County Department of Corrections' Motion to Dismiss (Filing No. 13) is granted.

2. Defendant Douglas County Department of Corrections is dismissed as a party defendant.

3. Defendant Douglas County's Motion to Dismiss (Filing No. 13) is granted.

4. The plaintiff is granted leave to file an Amended Complaint within fourteen (14) days of the date of this order.

3. Defendants shall file an answer or otherwise plead within fourteen (14) days thereafter.

Dated this 5th day of October, 2016.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge